UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:20-cv-23592-GAYLES

**PHYSICIAN'S CENTRAL BUSINESS
OFFICE & AFFILIATE, also known as
Mark Cereceda, D.C., et al.,**

    **Plaintiffs,**

v.

**UNDERWRITERS AT LLOYD'S,
LONDON,**

    **Defendant.**
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant Underwriters at Lloyd's, London's ("Underwriters") Motion to Dismiss [ECF No. 5]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons discussed below, the Motion is granted.

## BACKGROUND

This action involves an insurance coverage dispute between two groups of Plaintiffs and Defendant Underwriters. The first group of Plaintiffs consists of medical clinics: Physicians Central Business Office & Affiliates ("Physicians CBO") a/k/a Ceda Orthopedic Group, LLC; Ceda Orthopedics & Interventional Medicine of Cutler Bay, LLC; Ceda Orthopedics & Interventional Medicine of Downtown/Little Havana, LLC; Ceda Orthopedics & Interventional Medicine of FIU/Kendall, LLC; Ceda Orthopedics & Interventional Medicine of Hialeah, LLC; Ceda Orthopedics & Interventional Medicine of South Miami, LLC; Physicians Central Business Office, LLC; and Springs Crossing Imaging, LLC (collectively the "Clinics"). The second group of Plaintiffs consists of medical professionals: Mark Cereceda, D.C. ("Dr. Cereceda"); Maria

Cristina Crespo-Smith, M.D.; Nestor Javech, M.D.; Roberto Moya, M.D.; Roy Canizares, D.C.; Edgar Facuseh, D.C.; Patrick Fenelus, D.C.; Thomas Haban, D.C.; Karim Habayeb, D.C.; John Ross, D.C.; Michael Schulman, D.C.; Richard Yohan, D.C.; Eric Reese, D.C.; Alex Alonso, M.D.; Hernan Pabon, M.D.; Jorge Aguayo; Blanca Baires; Omaida Ceballos; Yessica Hernandez; Yunelkys Hidalgo; Yuneilis Nunez; Asuncion Otero; Nitte Paredes; Maria G Pascucci; Yelina M Hunter Pena; Marta Audreu Rodriguez; Mayelin Brito Sanchez; Yusleivys Gomez Soto; and Yanet Barbara Zapata (collectively the "Providers"). The Clinics and Providers seek a declaration that Underwriters has a duty to defend and indemnify them on claims arising from two underlying actions.

At the center of this lawsuit is Dr. Cereceda, a chiropractor and the owner and managing member of the Clinics. The Providers are medical doctors, chiropractors, massage therapists, and chiropractic assistants who performed services on behalf of the Clinics.

**I.     The Underlying Actions**

Each of the Clinics and Providers were named-defendants in at least one of two actions: *Government Employees Insurance Co. v. Mark A. Cereceda D.C.*, Case No. 19-cv-22206 (the "GEICO Action") and *State Farm Mutual Automobile Insurance Company v. Mark Cereceda D.C.*, Case No. 19-cv-22487 (the "State Farm Action") (collectively the "Underlying Actions."). As detailed below, in the Underlying Actions, GEICO and State Farm allege that the Clinics and Providers engaged in a fraudulent scheme to collect Personal Injury Protection ("PIP") benefits through the submission of bills for services that were not medically necessary but were still provided (or in some cases, not provided at all) to patients involved in auto accidents and who were eligible for no-fault benefits.

A.   **The GEICO Action**

On May 30, 2019, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Co., and GEICO Casualty Co. (collectively "GEICO") filed an action in the Southern District of Florida against some of the Clinics[1] and the Providers alleging claims for declaratory judgment, common law fraud, unjust enrichment, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq. ("FDUTPA"), and Florida's RICO Statute, Fla. Stat. § 772.103(3) and (4). Notably, GEICO alleged that it sought to recover more than $20 million that the Clinics and Providers "wrongfully obtained from GEICO by submitting, and causing to be submitted, thousands of fraudulent no-fault . . . insurance charges through [the Clinics] relating to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services, including initial examinations." [ECF No. 5-1 ¶ 1].

The GEICO Complaint is replete with allegations that the Clinics and Providers performed unnecessary medical procedures and wrongfully billed and/or wrongfully sought reimbursement for such procedures. For example, GEICO alleges:[2]

- The Clinics and Providers used the Clinics "as vehicles to submit a massive amount of fraudulent PIP billing to GEICO and other insurers. *Id.* ¶ 420.

- "The Billing not only misrepresented [the Clinic's] compliance with the Clinic Act, Self-Referral Act, and Chiropractor Advertising Laws, but also misrepresented the medical necessity of the underlying health care services, and whether the

---

[1] Ceda Orthopedic Group, LLC, and Physicians Central Business Office, LLC, are not named as plaintiffs in the GEICO Action.
[2] These allegations are just a few of the hundreds detailing unnecessary procedures and fraudulent billing.

3

- underlying health care services actually were performed in the first instance. *Id.* ¶ 421.

- The Clinics and Providers "purported to subject virtually every insured to a medically unnecessary course of 'treatment' that was provided pursuant to a pre-determined, fraudulent protocol." *Id.* ¶ 423.

- The Clinics and Providers fraudulently billed for initial examinations. *See e.g., Id.* ¶¶ 432, 558-59, 744-45, 900-901, 1057-58.

- The Clinics and Providers misrepresented the severity of the insureds' presenting problems to create a false basis to be reimbursed at higher rates. *See e.g., Id.* ¶¶ 448, 600, 702, 758, 912.

- The Clinics and Providers falsely represented that they performed "detailed" patient examinations to create a false basis to be reimbursed at higher rates. *See e.g., Id.* ¶¶ 475, 620, 776, 932, 1083.

- The Clinics and Providers misrepresented the extent of medical decision-making for examinations to get reimbursed at a higher rate. *See e.g., Id.* ¶¶ 521, 660, 788, 967, 1118.

- The Clinics and Providers submitted fraudulent charges for follow-up examinations, medically unnecessary pain management injections, unnecessary physical therapy and/or chiropractic treatment. *See e.g., Id.* ¶¶ 528, 556, 569, 681, 712, 725, 837, 868, 987, 1018, 1031, 1134.

GEICO incorporated by reference nearly all the background allegations in its complaint, including those set forth above, into each substantive claim.

4

B.     **The State Farm Action**

On June 14, 2019, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively "State Farm") filed an action in the Southern District of Florida against the Clinics and some of the Providers[3] alleging common law claims for fraud, unjust enrichment, civil conspiracy, and aiding and abetting fraud, and a statutory claim under FDUTPA. [ECF No. 5-2]. In its complaint, State Farm introduces the case as:

> a widespread fraudulent scheme in which [the Clinics and the Providers] act in concert to collect [No-Fault Benefits] . . . from State Farm . . . [The] scheme involves the submission of thousands of bills and supporting documentation for services that were not medically necessary and lawfully rendered, but were purportedly provided to patients involved in auto accidents and eligible for No-Fault Benefits under State Farm . . . insurance policies.

[ECF No. 5-2]. Like the Geico Action, State Farm's complaint is filled with allegations that the Clinics and Providers performed unnecessary medical procedures and wrongfully billed and/or wrongfully sought reimbursement for such procedures. For example, State Farm alleges:[4]

- The Clinics and Providers' "patients are not legitimately examined, diagnosed, or treated for their unique needs." *Id.* ¶ 56.

- "The bills and supporting documentation associated with the purported initial, follow-up, and final examinations, the EMC findings, the treatment, diagnostic imaging, and other services rendered by [the Clinics and the Providers] to patients, which [the Clinics and Providers] submitted . . . to State Farm . . . are fraudulent because they falsely represent that services were medically necessary and lawfully rendered, when they were not." *Id.* ¶ 70.

---

[3] The following Providers were not named as defendants in the State Farm Action: Eric Reese, D.C.; Alex Alonso, M.D.; Hernan Pabon, M.D.; Jorge Aguayo; Blanca Baires; Omaida Ceballos; Yessica Hernandez; Yunelkys Hidalgo; Yuneilis Nunez; Asuncion Otero; Nitte Paredes; Maria G Pascucci; Yelina M Hunter Pena; Marta Audreu Rodriguez; Mayelin Brito Sanchez; Yusleivys Gomez Soto; and Yanet Barbara Zapata.
[4] These allegations are just some of the hundreds detailing unnecessary procedures and fraudulent billing.

5

- The Clinics and Providers performed fraudulent initial examinations. *See e.g., Id.* ¶ 72.

- The Clinics and Providers' patients were subjected to, and State Farm billed for, a fraudulent treatment plan that was not medically necessary. *See e.g., Id.* ¶ 86, 95.

- The Clinics and Providers referred patients for medically unnecessary MRIs and CI scans. *See e.g., Id.* ¶ 104.

- The Clinics and Providers billed State Farm for fraudulent re-examinations and final examinations. *See e.g., Id.* ¶ 113, 117.

- Cereceda failed to supervise the business activities of the Clinics and, therefore, was not in compliance with federal and state laws. As a result, the Clinics were not entitled to collect No-Fault benefits but nevertheless "submitted . . . bills to State Farm . . . that falsely represented such bills were for services lawfully rendered, and eligible to collect No-Fault Benefits when in fact they were not." *Id.* ¶ 129.

[ECF No. 5-2]. State Farm incorporated by reference all the background allegations in its complaint, including those detailed above, into each substantive count. *Id.*

## II. The Policy

On April 1, 2019, Underwriters issued a Directors and Officers Insurance Policy to Physicians Central Business Office & Affiliates (Physicians CBO)[5] (the "Policy"). Physicians CBO is the "Named Insured" under the Policy and the relevant insuring agreement is the Policy's Directors and Officers and Private Company Liability Coverage Element. The Policy provides in pertinent part:

---

[5] According to the Complaint, Physicians Central Business Office & Affiliates" is a "moniker" for the Clinics and Providers. [ECF No. 1-2 ¶ 10].

**General Terms and Conditions**

. . .

II.     **Definitions**

B.  **Company** means (i) the **Named Insured**; (ii) any **Subsidiary**; and (iii) the **Named Insured** or any **Subsidiary** as a debtor-in-possession under United States of America bankruptcy law or similar legal status under foreign law.

. . .

**Directors and Officers and Private Company Liability Coverage Element**

. . .

**Insuring Agreements**

**Coverage A: Individual Insurance Coverage**

The **Insurer** shall pay **Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the extended Reporting Period, if applicable, for any actual or alleged **Wrongful Act** of such **Individual Insured** for such **Loss.**

**Coverage B: Company Reimbursement Coverage**

The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the extended Reporting Period, if applicable, for any actual or alleged **Wrongful Act** of such **Individual Insured**, but only when and to the extent that such **Company** has indemnified such **Individual Insurance** for such **Loss**.

**Coverage C: Company Coverage**

The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against a **Company** during the **Policy Period** or the Extended Reporting Period, if applicable, for any actual or alleged **Wrongful Act** of a **Company**.

. . .

II.     **Definitions**

In addition to the Definitions [above], the following terms . . . have the meanings indicated.

. . .

    H.    **Individual Insured** means any

        1.    **Executive;**
        2.    **Employee;** or
        3.    **Outside Entity Executive**

    I.    **Insured** means any

        1.    **Company**; or
        2.    **Individual Insured**.

. . .

    K.    **Loss** means

        1.    the amount that any insured becomes legally obligated to pay in connection with a covered **Claim**, including, but not limited to:

            (i) judgments . . . and settlements; and

            (ii) damages . . . .

        2.    **Defense Costs;**

…

    Q.    **Subsidiary**[6] means

        1.    any for-profit entity in which the **Company** has or had **Management Control** on or before the inception date of the policy either directly or indirectly through one or more other **Subsidiaries**;

        2.    any for-profit entity in which the **Company** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Subsidiaries**; and whose assets do not exceed 35% of the assets of the Company, prior to the Company acquiring Management Control of the Subsidiary; or

---

[6] Endorsement 8 to the Policy amended the definition of "Subsidiary" to include Springs Crossing Imagining, LLC; MNVG Properties, LLC; Ceda Orthopedics & Interventional Medicine of Hialeah LLC; Ceda Orthopedics & Interventional Medicine of South Miami, LLC; Ceda Orthopedics and Interventional Medicine of FIU/Kendall, LLC; Ceda Orthopedics & Interventional Medicine of Downtown/Little Havana, LLC; Ceda Orthopedics & Interventional Medicine of Cutler Bay, LLC; Snap Human Alignment, LLC; and Ceda Orthopedic Group LLC. [ECF No. 1-2 at p. 72].

      3.     any for-profit entity in which the Company acquires Management Control during the Policy Period, either directly or indirectly, through one or more other Subsidiaries and whose assets exceed 35% of the assets of the Company, prior to the Company acquiring Management Control of the Subsidiary but only for a period of 90 days subsequent to the Company acquiring Management Control of the Subsidiary.

R.     **Wrongful Act** means

      1.     any breach of duty, neglect, error, misstatement, misleading statement, omission or act by an **Individual Insured** in their respective capacities as such, or any matter claimed against such **Individual Insured** solely by reason of his or her status as an **Executive Employee**, or **Outside Entity Executive**; or

      2.     any breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company.**

### III. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured:**

. . .

O.     with respect to Coverage C of this **Coverage Element** only:

. . .

      6.     alleging, arising out of, based upon or attributable to any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this **Coverage Element**;

. . .

**Endorsement Number 12**

. . .

The coverage afforded by this policy shall not apply to any **Claim** made against any **Insured**, arising out of, based upon, or attributable to the following:

9

any portion of any **Claim**, including defense there-of which alleges in whole or in part any **Wrongful Act** by any member of the Cereceda family

Including but not limited to any **Wrongful Act** or **Related Wrongful Acts**, facts, or circumstances, which have as a common nexus any **Wrongful Act** or **Related Wrongful Acts**, facts, or circumstances related to such.

. . .

**Endorsement Number 13**

. . .

The coverage afforded by this policy shall not apply to any **Claim** made against any **Insured**, arising out of, based upon or attributable to the following:

any portion of any **Claim** including defense there-of which alleges in whole or in part

a.   the performance or alleged performance of any unnecessary medical procedure,

. . .

d.   any excess or wrongful charging, billing or seeking of reimbursement for any procedure

. . .

Including but not limited to any **Wrongful Act** or **Related Wrongful Acts**, facts, or circumstances, which have as a common nexus any **Wrongful Act** or **Related Wrongful Acts**, facts, or circumstances related to such.

[ECF No. 1-2 at pp. 22-78].

### III.   The Current Action

The Clinics and Providers provided timely notice of the Underlying Actions to Underwriters. Underwriters denied coverage under the Policy and declined to pay for any attorneys' fees and costs incurred in the defense of the Underlying Actions. As a result, the Clinics and Providers filed this action against Underwriters for declaratory relief and breach of contract. The Clinics and Providers ask this Court to declare that Underwriters has a duty to defend and

indemnify them in the Underlying Actions and that Underwriters breached the policy.[7] Underwriters now moves to dismiss arguing it has no duty to defend or indemnify the Clinics and Providers. In particular, Underwriters argues that Exclusion O.6, Endorsement 12, and Endorsement 13 each bar coverage for the Underlying Actions. [ECF No. 5].

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the–defendant–unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

In reviewing a 12(b)(6) motion, the Court is largely limited to the allegations in the Complaint and the attached exhibits. However, "a document outside the four corners of the

---

[7] The Underlying Actions have both since settled. *See* Case No. 19-cv-22206 [ECF No. 121]; Case No. 19-cv-22487 [ECF No. 130].

complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

## DISCUSSION

**I.      Insurance Policy Interpretation and the Duty to Defend**

Under Florida law, "[i]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007). Courts must "apply a construction that is practical and reasonable as well as just." *Weldon v. All American Life Ins. Co.*, 605 So. 2d 911, 915 (Fla. 2nd DCA 1992). "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). If there is a dispute over coverage and exclusions, the Court employs a burden-shifting framework. *See E.S.Y., Inc.*, 2015 WL 6164666, at * 6. "A person seeking to recover on an insurance policy has the burden of proving a loss from causes within the terms of the policy[,] and if such proof of loss is made within the contract of insurance, the burden is on the insurer to establish that the loss arose from a cause that is excepted from the policy." *Id.* (quoting *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. 3d DCA 1977)). If the insurer can establish that an exclusion applies, the burden shifts to the insured to prove an exception to the exclusion. *Id.*

An insurer's duty to defend its insured "depends *solely* on the facts and legal theories alleged in the pleadings and claims against the insured." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (quoting *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008)). "The duty to defend arises when the relevant pleadings allege facts that fairly and potentially bring the suit within policy coverage." *Id*. (internal quotations and

12

citations omitted). However, in "exceptional cases" the Court may consider undisputed extrinsic facts "when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." *Stephens*, 749 F.3d at 1324 (11th Cir. 2014) (quoting *First Specialty Ins. Corp. v. 633 Partners*, *1324 Ltd., 300 F. App'x. 777, 786 (11th Cir. 2008)).

Underwriters contends that it had no duty to defend the Clinics and Providers in the Underlying Actions. To make this determination, the Court looks only to the allegations in the Underlying Complaint and the terms of the Policy. *See Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005). If the allegations in the Underlying Complaint do not establish coverage, there is no duty to defend. *James River Ins. Co. v. Bodywell Nutrition, LLC*, 842 F. Supp. 2d 1351, 1354 (S.D. Fla. 2012). Unsupported and conclusory "buzz words" are insufficient to trigger coverage. *State Farm Fire & Cas. Co. v. Setinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). In addition, inferences are insufficient to trigger coverage. *Fun Spree Vacations, Inc. v. Orion Ins. Co.,* 659 So. 2d 419, 421-22 (Fla. 3d DCA 1995) ("[T]he allegations in the complaint control in determining the insurer's duty to defend . . . inferences are not sufficient.") (citations omitted).

"[T]he duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless. . . . Any doubts regarding the duty to defend must be resolved in favor of the insured." *Jones*, 908 So. 2d at 442-43. "Florida law provides that when at least some of the claims are covered, the insurer has a duty to defend the entire suit." *Century Surety Co. v. Southern Coatings, Inc.*, No. 06-61880, 2007 WL 9701080, at *3 (S.D. Fla. December 26, 2007). "[W]here there is no duty to defend, there is no duty to indemnify." *See E.S.Y., Inc. v. Scottsdale Ins. Co.*, 139 F. Supp. 3d 1341 (S.D. Fla. 2015) (citing *Farrer v. U.S. Fid. & Guar. Co.*, 809 So. 2d 85, 88 (Fla. 4th DCA 2002)).

## II. Exclusions

Underwriters argues that Endorsement No. 13, Exclusion O.6, and Endorsement 12 each independently bar coverage for the Underlying Actions.

### A. Endorsement No. 13

Endorsement No. 13 excludes coverage for "any **Claim** made against any **Insured**, arising out of, based upon or attributable to . . . the performance or alleged performance of any unnecessary medical procedure [or] any excess or wrongful charging, billing or seeking of reimbursement for any procedure . . . ." [ECF No. 1-2]. The Court finds that the expansive language of Endorsement No. 13 excludes coverage for the Underlying Actions. *See Horn v. Liberty Ins. Underwriters*, 998 F.3d 1289, 1294 (11th Cir. 2021) ("The Supreme Court of Florida has interpreted the phrase [arising out of] broadly and held that it is 'broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005)).

As set forth above, both the GEICO Complaint and the State Farm Complaint repeatedly allege that the Clinics and Providers performed unnecessary medical procedures and wrongfully billed and/or sought reimbursement from GEICO and State Farm. Moreover, each substantive count in the Underlying Complaints incorporates by reference the allegations related to fraudulent billing. All the counts—whether it be a FDUPTA violation, RICO violation, or common law fraud claim—"aris[e] out of, [are] based upon, or attributable to" the Clinics and Providers' fraudulent billing practices. [ECF No. 1-2]. Indeed, there is no claim that does not "grow out of" GEICO and State Farm's well-documented accounts of the Clinics and Providers' scheme to perform

unwarranted procedures for the purpose of inflating bills and reimbursements. As a result, Underwriters has no duty to defend the Clinics and Providers in the Underlying Actions.

**B.  Exclusion O.6**

Exclusion O.6 bars coverage for claims "alleging, arising out of, based upon or attributable to any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this **Coverage Element**." [ECF No. 1-2]. Virtually all the allegations in the Underlying Action "arise out of" the Clinics and Providers' rendering of professional services to patients and then wrongfully seeking payments or reimbursements. *Id.* Despite the Clinics and Providers' argument to the contrary, it is immaterial that the claims in the Underlying Actions do not allege the negligent performance of those services. The Clinic and Providers' purported fraudulent submission of bills necessarily arises out of their provision of professional services for patients involved in auto accidents for the purpose of collecting no-fault benefits. As a result, the plain and unambiguous language of Exclusion O.6 excludes coverage for the Clinics[8] in the Underlying Action.[9]

**III.  Duty to Indemnify**

The Court finds that Underwriters had no duty to defend the Clinics and Providers in the Underlying Actions. As a result, the Court also finds that Underwriters has no duty to indemnify the Clinics and Providers. *See Burlington Ins. Co. v. Normandy Gen. Partners*, 560 F. App'x. 844,

---

[8] Exclusion O.6 only applies to Coverage C—claims made against a Company and not the individual insureds.
[9] Because the Court finds that Endorsement No. 13 and Exclusion O.6 bar coverage for the Underlying Actions, it does not address Endorsement No. 12. However, the Court notes that neither the Policy nor the Underlying Actions specifically state that Mark Cereceda is a member of the Cereceda Family, and the Policy does not define "Cereceda Family." Accordingly, at this stage of the litigation, it is unlikely that the Court could apply Endorsement No. 12 to exclude coverage.

849 (11th Cir. 2014) ("In sum, because Burlington had no duty to defend Normandy in the Appellants' action against Normandy, Burlington had no corresponding duty to indemnify.").

## CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant Underwriters at Lloyd's, London's Motion to Dismiss [ECF No. 5] is GRANTED. This action is DISMISSED with prejudice and CLOSED for administrative purposes.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of February, 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE